FILED

2008 AUG 27  PM 3: 16

CLERK U.S. DISTRICT COURT
CENTRAL DIST. O  CALIF.
LOS ANGELES

BY_____

1  WHATLEY DRAKE & KALLAS, LLC
   Edith M. Kallas, Esq.
2  ekallas@wdklaw.com (*pro hac vice forthcoming*)
   Joseph P. Guglielmo
3  jguglielmo@wdklaw.com (*pro hac vice forthcoming*)
   1540 Broadway, 37th Floor
4  New York, NY 10036
   Tel: (212) 447-7070
5  FAX: (212) 447-7077

6  ROSNER & MANSFIELD, LLP
   Alan M. Mansfield, Esq. (SBN: 125998)
7  alan@rosnerandmansfield.com
   10085 Carroll Canyon Road, Suite 100
8  San Diego, CA  92131
   Tel: (858) 348-1005
9  FAX: (858) 348-1150

10  Attorneys for Plaintiffs

11  [Additional Counsel Appear on Signature Page]

12            UNITED STATES DISTRICT COURT

13          CENTRAL DISTRICT OF CALIFORNIA

14               WESTERN DIVISION

| | |
|---|---|
| 15  CRESCENCIO GALVEZ, CARMEN ACUNA, and GUADALUPE GALVEZ, individually and on behalf of all others similarly situated, | Case No. **CV08-05642** **(JCx)** |
| 17                    Plaintiffs, | **CLASS ACTION** |
| 18  v. | **CLASS ACTION COMPLAINT FOR:** |
| 19  TOUCH-TEL U.S.A., L.P. dba TOUCH-TEL USA, LLC, | 1)  **VIOLATION OF §§ 17500 AND 17200 OF THE CALIFORNIA BUSINESS & PROFESSIONS CODE;** |
| 21                    Defendant. | 2)  **BREACH OF CONTRACT;** 3)  **MONEY HAD AND RECEIVED, AND UNJUST ENRICHMENT;** |
| | 4)  **VIOLATION OF § 17538.9 OF THE CALIFORNIA BUSINESS & PROFESSIONS CODE; and** |
| | 5)  **DECLARATORY RELIEF** |
| | **DEMAND FOR JURY TRIAL** |

RGK

27      Plaintiffs Crescencio Galvez, Carmen Acuna, and Guadalupe Galvez

28  (collectively "Plaintiffs"), by and through their attorneys, bring this action against

1

COPY

defendant Touch-Tel U.S.A., L.P. ("Touch-Tel" or "Defendant"), on behalf of themselves and a class of consumers (the "Class") who purchased pre-paid telephone cards that were produced, sold, administered, distributed, or otherwise offered to the public by Defendant between August 27, 2004 and the present (the "Class Period"). Plaintiffs allege the following upon their own personal knowledge and with evidentiary support where specifically so identified, or where there is no personal knowledge, upon information and belief and investigation of counsel formed after an inquiry reasonable under the circumstances, which allegations will likely have evidentiary support after a reasonable opportunity for further investigation or discovery:

## NATURE OF THE ACTION

1.      In direct contravention of California law that specifically details the standards for advertising such products, Defendant systematically misleads consumers who purchase and use pre-paid, non-rechargeable telephone cards ("pre-paid calling cards") offered by Defendant, by misrepresenting the number of minutes of international telephone service the cards provide and/or concealing that various fees charged when consumers use the cards further reduce the number of minutes available.

2.      Plaintiffs bring this nationwide class action as a result of Defendant's systematic scheme to deceive consumers who purchase and use pre-paid calling cards. In violation of state statutory laws prohibiting unfair and deceptive business practices, as well as in breach of their contracts with consumers, Defendant perpetrates its scheme through a variety of deceptive means, as described herein.

3.      Uniformly disseminating its conduct nationwide, Defendant sells pre-paid calling cards to consumers throughout the United States.  These cards allegedly enable consumers to make international calls at relatively low cost as compared to other sources of international telephone service.  Accordingly, many low-income individuals and immigrants purchase and use them to make telephone

2

calls to their home countries. Indeed, in excess of $2 billion worth of pre-paid calling cards are sold in the United States each year.

4.     Defendant perpetrates its fraud through various means, including, *inter alia*, misrepresenting the number of minutes of telephone service that a consumer will get from a pre-paid calling card; misrepresenting the amount of telephone connection time actually remaining on a pre-paid calling card when a consumer is using the card; concealing when connection fees apply; employing misleading marketing techniques that make it virtually impossible for consumers to compare the rates and costs of using different pre-paid calling cards; misrepresenting the expiration dates on pre-paid calling cards; unfairly preventing customers from utilizing balances remaining on pre-paid calling cards when such balances are less than the cost of a phone call including connection fees; and failing to adequately disclose that Defendant charges more for calls involving wireless phones.

5.     Defendant uniformly advertises its pre-paid calling cards as providing a certain number of minutes of telephone calling time to a specific destination – for example, a $5.00 card might be advertised as providing 150 minutes of calling time to Mexico from a certain location. The representations of the number of minutes a given pre-paid calling card will provide to a given location are printed on Defendant's advertising posters, the packaging of the pre-paid calling cards, and on the cards themselves. However, as a result of Defendant's deceptive practices, consumers consistently receive fewer calling card minutes than promised.

6.     Consumers are also given automated voice prompts each time they make a call with a pre-paid calling card. These prompts purport to inform consumers how many minutes they have for the call, and consumers reasonably rely on those voice prompts, along with Defendant's advertising, to confirm the number of minutes they have purchased and how much time they have left on their pre-paid calling cards after the initial use. However, as described more fully below, Defendant's computer systems are pre-programmed to misrepresent the number of

3

minutes left on pre-paid calling cards. Thus, consumers are unable to know, at any given time, how much time they have remaining on their pre-paid calling cards.

7.     When consumers use their pre-paid calling cards, Defendant charges them a variety of undisclosed fees and other charges that are deducted from the value remaining on the card, thereby further reducing the number of telephone service minutes that a consumer will be able to use.

8.     Defendant does not inform consumers when such charges are imposed; it simply deducts the amount from the value of the card, without disclosing this fact to the consumer. Through these and other deceptive practices, Defendant cheats users of pre-paid calling cards out of millions of dollars each year.

## PARTIES

### Plaintiffs

9.     On personal knowledge, Plaintiff Crescencio Galvez resides in Los Angeles, California.

10.     On personal knowledge, during the Class Period, specifically during the Summer of 2007, Mr. Galvez purchased a Touch-Tel U.S.A. pre-paid calling card at Big Bear Liquor Market, 2606 E. First Street, Los Angeles, California, for $5.00. Mr. Galvez bought the card as a result of the representation that the card would provide 142 minutes of call time to Mexico from Los Angeles, which was printed on Touch-Tel's advertisements posted at the point-of-sale. When he used his pre-paid calling card for the first time, a computerized voice prompt confirmed over the telephone that he had 142 minutes of calling time to Mexico from Los Angeles. However, contrary to these representations, Mr. Galvez only received approximately 100 minutes of call time – or only approximately 70% of the minutes advertised and represented by Defendant. Mr. Galvez thus lost money or property as a result of Defendant's business practices.

11.     On personal knowledge, Plaintiff Carmen Acuna resides in Los Angeles, California.

4

12.   On personal knowledge, during the Class Period, specifically, in Summer of 2007, Ms. Acuna purchased a Touch-Tel U.S.A. pre-paid calling card at a liquor store at 2901 E. First Street, Los Angeles, California, for $5.00. Ms. Acuna bought the card as a result of the representation that the card would provide 142 minutes of call time to Mexico from Los Angeles, which was printed on Touch-Tel's advertisements posted at the point-of-sale. When she used her calling card for the first time, a computerized voice prompt confirmed over the telephone that she had 142 minutes of calling time to Mexico from Los Angeles. However, contrary to these representations, Ms. Acuna only received approximately 90 minutes of call time – or only approximately 63% of the minutes advertised and represented by Defendant. Ms. Acuna thus lost money or property as a result of Defendant's business practices.

13.   On personal knowledge, Plaintiff Guadalupe Galvez resides in Los Angeles, California.

14.   On personal knowledge, during the Class Period, specifically, in the Summer of 2007, Ms. Galvez purchased a Touch-Tel U.S.A. pre-paid calling card at Stephanie Market, 2961 Fourth Street, Los Angeles, California, for $5.00. Ms. Galvez bought the card as a result of the representation that the card would provide 142 minutes of call time to Mexico from Los Angeles, which was printed on Touch-Tel's advertisements posted at the point-of-sale. When she used her calling card for the first time, a computerized voice prompt confirmed over the telephone that she had 142 minutes of calling time to Mexico from Los Angeles. However, contrary to these representations, Ms. Galvez only received approximately 85 minutes of call time – or only approximately 60% of the minutes advertised and represented by Defendant. Ms. Galvez thus lost money or property as a result of Defendant's business practices.

///

///

5

**Defendant**

15.    Defendant Touch-Tel U.S.A., L.P. is a Texas corporation registered to do business in the State of California, with its address at 5444 Westheimer, Suite 1535 Houston, Texas 77056.

16.    Touch-Tel is in the business of servicing, manufacturing and/or distributing pre-paid calling cards throughout the nation, and further creates, disseminates and distributes advertising in conjunction therewith.   It operates in five major California markets – more than any other state – and specifically claims to focus its advertising on the Latino market.

17.    On personal knowledge, Touch-Tel's website states that it the "fastest growing phone card company in the USA and its flagship product, 'TELECENTAVOS®' is the number one selling single phone card in the country." It also boasts: "Our distribution channel has presence in Alabama, Arizona, California, Colorado, Delaware, Georgia, Florida, Illinois, Maryland, New Jersey, New Mexico, New York, North and South Carolina, Oklahoma, Tennessee, Texas, Nevada, Virginia and Wisconsin."   *See* http://www.touch-tel.com/main.html (last accessed on August 26, 2008).

18.    None of these pre-paid calling cards are regulated by a government agency that would preclude the Court from providing full and complete relief to members of the Class, nor is Defendant required to make any tariff filing. However, Plaintiffs do not seek to change, diminish, or modify the rates and fees being charged by Defendant pursuant to filings with any governmental regulatory agency, to the extent such filings were previously required or may be required in a particular state.

## JURISDICTION AND VENUE

19.    This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. §1332 (2005), as there are more than 100 class members who are located both within and outside the State of California, and

6

Plaintiffs allege that the damages suffered and sought to be recovered herein total, in the aggregate, more than $5,000,000. This Court has original jurisdiction over this action under 28 U.S.C. §§ 1331, 1338 and 1367.

20. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to the claims asserted herein occurred in this District.

## FACTS

### Background

21. In the telephone service industry, pre-paid calling cards are commonplace and are primarily used to make long distance and international phone calls. By definition, a pre-paid calling card is a card through which a customer obtains telephone service that is paid for in advance. Such cards are primarily targeted and marketed to immigrants and individuals who generally do not speak and read English as their primary language.

22. Pre-paid calling cards are sold in retail outfits such as convenience stores, and are heavily promoted in immigrant communities as an affordable option for people who need to make calls overseas but lack the means to obtain a cellular telephone or regular long-distance and international telephone service.

23. Pre-paid calling cards, including those offered by Defendant, are available in various dollar amounts, ranging from $2.00 to $100.00 per card, and are sold with accompanying, uniform representations, printed on the cards themselves, on point-of-sale posters, and/or on the packaging of the cards, indicating how many minutes of calling time to a specific location are available on the cards.

24. Most pre-paid calling cards are disposable, meaning that when the amount of calling card minutes on the card is exhausted, the card is thrown away rather than having additional dollars added to it.

///

7

25.     The purchaser of a calling card actually buys access to increments of long distance telephone access via a fully automated computer system, commonly referred to in the industry as a "platform." The platform processes various relevant data points, including the value of the pre-paid calling card, the telephone rate table in effect, the origin of the call and the destination of the call, and keeps records of that information, allowing the company to determine, and then inform the consumer, as to the amount of time he or she has for the call.

26.     A personal identification number (PIN) and local telephone numbers to call for access are commonly printed on pre-paid calling cards. Calls are made by calling the access number and, upon being prompted, entering the PIN listed on the card.

27.     The PIN is used by the Defendant to keep records of how much time is left on the card.

28.     After the platform verifies the PIN, the consumer is then granted access to the long distance services he or she has purchased. The consumer is subsequently prompted by the platform to enter the destination telephone number he or she wishes to be connected with.

29.     After the consumer enters the destination number, an automated voice prompt states the number of minutes available for the call, *e.g.*: "You have 42 minutes for this call." This voice prompt is generated by the platform.

30.     Once the consumer has exhausted the increments of long distance telephone services purchased, the PIN ceases to provide access to such telecommunications services.

31.     Pre-paid calling cards are popular among people who desire low cost telecommunication services, such as recent immigrants and other persons having long distance and international calling needs and budgetary concerns. For example, persons having recently immigrated to the United States may need to communicate frequently with family back in their home country, but may not have the means by

8

which to obtain or pay for long-distance service through conventional telephone service arrangements. Because these groups of people tend to be heavy users of international long distance, Defendant actively targets the marketing of its pre-paid calling cards to them, among others. Such persons are particularly susceptible to misleading advertising due to their limited English speaking and reading abilities. Some of the most frequent destination countries for immigrants using pre-paid calling cards to communicate with their loved ones overseas are locations such as the Dominican Republic, Guatemala, Mexico, El Salvador, Colombia, Nicaragua, Ecuador, Haiti, Honduras and Peru.

32.     Many consumers use the entire balance (amount of minutes) on a pre-paid calling card on their first call.

**Defendant's Practices**

33.     Defendant creates, disseminates and distributes advertising to promote the sale of its pre-paid calling cards, listing specific amounts of minutes available depending on the value of the pre-paid calling card. Defendant's uniform advertising consists of point of purchase posters, website advertising, packaging and voice prompts, all of which advertising uniformly communicates to consumers that they will receive certain numbers of minutes to a given location for a certain cost.

34.     As detailed below, contrary to such representations, and in contravention of California law regulating such advertising, Defendant's cards do not provide the minutes advertised to consumers on the face of the cards and on their posters, packaging and voice prompts, nor do they properly disclose the substantial surcharges imposed on the use of such cards.

35.     Defendant also does not disclose to consumers that its cards do not deliver the number of minutes promised.

36.     The minutes actually delivered to consumers by Defendant are materially less than those represented in Defendant's advertising as a result of the

9

wrongful practices described herein, resulting in a loss of money or property to Plaintiffs and the Class members. Accordingly Defendant's advertising is false, misleading and deceptive.

37. Contrary to California law, and specifically Cal. Business & Professions Code §17538.9, Defendant secretly applies connection fees and other charges without adequately informing consumers that such fees and charges are being applied and are used to deduct from the actual value of the pre-paid calling card. Defendant represents on the face of its pre-paid calling cards and in printed advertisements that there are "no connection fees" or that "connection fees *may* apply" (emphasis added), even though connection fees *will* apply in almost every instance. Defendant does not say how much these fees might be. These are material because a connection fee may consume as much as 40% of the value of a pre-paid calling card.

38. Defendant also imposes charges, such as bi-weekly service charges, that are automatically deducted from the value of a card, without adequately informing consumers of this deduction or its amount.

39. Defendant also advertises low per-minute costs in order to convince consumers that the overall cost of each call is low, when in fact the per-minute cost of calls is materially higher when connection fees and other charges are factored in. Defendant does not adequately disclose this material fact to consumers, if at all.

40. Defendant also represents that it provides a "toll-free" access number. This representation is false, because customers using the "toll-free" number are charged a higher per-minute rate than those who use local access numbers.

41. Defendant also misrepresents and actively conceals that it charges consumers more for calls using wireless telephones than those on land line telephones. All of these practices result in consumers paying more and receiving less in terms of telephone talk time than represented by Defendant.

///

10

**The Conduct at Issue is Centered in California**

42.   Much of the conduct at issue arises in California. Specifically, Defendant's activities were specifically targeted to consumers in California and the sale, advertising and marketing of the pre-paid calling cards occurred in California and have been coordinated through Defendant's offices in California. Touch-Tel operates in five major California markets – more than any other state – and specifically claims to focus its advertising on the Latino market. Discovery may further establish that such conduct emanates from California to other states due to Touch-Tel's substantial presence and operations in California.

## CLASS ACTION ALLEGATIONS

43.   Plaintiffs bring this action on their own behalf and as a class action pursuant to Rules 23(b)(2) and 23 (b)(3) of the Federal Rules of Civil Procedure on behalf of the following proposed class:

> All persons who purchased between August 27, 2004 to the present (the "Class Period") pre-paid calling cards that were produced, sold, administered, distributed, or otherwise offered to the public by Defendant (the "Class").

44.   Upon completion of discovery with respect to the scope of the Class or Class, Plaintiffs reserve the right to amend the Class Period and/or the Class definition.

45.   Excluded from the Class are Defendant, its parents, subsidiaries and affiliates, its directors and officers and members of its immediate families, the Court, the Court's spouse, all persons within the third degree of relationship to the Court and its spouse, and the spouses of all such persons.

**Numerosity**:

46.   The members of the Class are so numerous and geographically diverse that joinder of all of them is impracticable. While the exact number and identities of members of the Class are unknown to Plaintiffs at this time and can only be

11

ascertained through appropriate discovery, based on Defendant's representations and the scope of its advertising, there are thousands of Class members throughout the United States.

**Commonality**:

47.     There are questions of fact and law common to the members of the Class, which predominate over any individual questions of law or fact, including but not limited to the following:

- Whether Defendant has systematically provided false, untrue or misleading information in connection with the sale of its pre-paid calling cards, including, but not limited to, the amount of telephone service time available on the cards and the existence and extent of charges associated with the use of the pre-paid calling cards;

- Whether Defendant has systematically failed to adequately disclose material information on its pre-paid calling cards that is required to be disclosed under California law, including, but not limited to, all charges associated with the use of the cards;

- Whether Defendant has violated relevant state consumer laws through its wrongful practices;

- Whether Defendant has breached its contracts with Plaintiffs and the Class through its wrongful practices;

- Whether Defendant has been unjustly enriched through its wrongful practices;

- Whether Plaintiffs and the members of the Class have sustained damages or injuries by reason of Defendant's wrongful practices, and if so, the proper measure of such damages or injuries;

- Whether Plaintiffs and members of the Class are entitled to injunctive and/or other equitable relief; and

///

12

- Whether Plaintiffs and the members of the Class are entitled to declaratory relief.

**Typicality:**

48.     Plaintiffs' claims are typical or the claims of the other members of the Class, in that Plaintiffs aver a common course of conduct by Defendant towards themselves and members of the Class.  Plaintiffs, like other members of the Class, purchased pre-paid calling cards and did not receive the full value represented by Defendant, and suffered damages and/or lost money or property as a result of Defendant's wrongful practices as detailed above.

**Adequacy:**

49.     Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' claims are coextensive with, and not antagonistic to, the claims of the other members of the Class.  Plaintiffs are willing and able to vigorously prosecute this action on behalf of the Class, and Plaintiffs have retained competent and experienced counsel who satisfy the requirements of Rule 23(g).

50.     Plaintiffs bring this action under Rule 23(b)(3) because common questions of law and fact predominate over issues that are individual to members of the Class.   In addition, the expense of litigating each Class members' claims individually would be so cost prohibitive as to deny Class members a viable remedy.  Certification under Rule 23(b)(3) is appropriate because a class action is superior to the other available methods for the fair and efficient adjudication of this action, and Plaintiffs envision no unusual difficulty in the management of this action as a class action as Defendant would or should retain records of the amount of deductions and overcharges made on Class members' calling cards.  Notice of the pendency of this action and any resolution thereof can be accomplished by a combination of publication and direct notice to those Class members whose names and addresses are on file with Defendant.

/ / /

51.     Plaintiffs also bring this action under Rule 23(b)(2), because Defendant has acted or refused to act on grounds generally applicable to all members of the Class, thereby making final injunctive relief concerning the Class as a whole appropriate.  In the absence of appropriate injunctive relief, Defendant will continue to operate its systematic scheme.  Defendant's uniform conduct towards Plaintiffs and other members of the Class makes certification under Rule 23(b)(2) appropriate.

## COUNT I

### *False or Misleading Advertising Under §17500 of the California Business & Professions Code*

52.     Plaintiffs repeat and re-allege the allegations set forth in the above paragraphs as if fully set forth herein.

53.     Defendant has caused to be disseminated, either in or from this State, untrue or misleading factual statements in advertising, as set forth above, concerning its pre-paid calling card businesses, in violation of §17500, *et seq.* of the California Business & Professions Code, and the restrictions set forth in §17358.9.

54.     Defendant's untrue and misleading advertising described herein is likely to mislead consumers with respect to the number of minutes they actually receive for the price they pay.

55.     Defendant's acts and practices described herein were intended to induce Class members to enter into transactions to purchase these pre-paid calling cards and have caused deception of the public, misleading reasonable consumers targeted by such advertising as to the true characteristics of Defendant's products. If it had exercised reasonable care, Defendant should have known such statements were untrue or misleading, or made such statements as part of a scheme with the intent to sell such services as advertised.

56.     As a result of Defendant's acts and practices as alleged above, Plaintiffs and members of the Class have been injured in fact and have lost money

14

or property. They are thus entitled to the remedies available under the Unfair Competition Law, including restitution and disgorgement, appropriate preliminary and permanent injunctive relief and imposition of a constructive trust, and such other and further relief as the Court may deem proper.

## COUNT II

### *Unlawful, Fraudulent and Unfair Business Practices Under § 17200 of the California Business & Professions Code*

57.    Plaintiffs repeat and re-allege the allegations set forth in the above paragraphs as if fully set forth herein.

58.    Defendant has engaged in unlawful business acts and practices, as set forth in detail above, in connection with its pre-paid calling card business by engaging in conduct in violation of Sections 17200, *et seq.* and 17500, *et seq.*, including Section 17538.9, of the California Business & Professions Code, California Civil Code §1750, *et seq.*, and the other laws identified herein. Plaintiffs reserve the right to identify additional violations of laws as circumstances warrant.

59.    Defendant's conduct is likely to mislead consumers with respect to the number of minutes they receive for the price they pay, resulting in its engaging in fraudulent business acts and practices.

60.    Defendant's acts and practices described herein have caused deception of the public, misleading prospective purchasers and targeted consumers as to the true characteristics and qualities of Defendant's products. The gravity of such conduct outweighs any justification therefor. The prohibition of such conduct is tethered to a legislative policy as set forth in Section 17358.9. Defendant has thus engaged in an unfair business act or practice.

61.    As a result of Defendant's conduct as alleged above, Plaintiffs and members of the Class have been injured in fact and have lost money or property. They are thus entitled to the remedies available under the Unfair Competition Law, including restitution and disgorgement, appropriate preliminary and permanent

15

injunctive relief and imposition of a constructive trust, and such other and further relief as the Court may deem proper.

## COUNT III

### *Breach of Contract*

62.   Plaintiffs repeat and re-allege the allegations set forth in the above paragraphs as if fully set forth herein.

63.   Defendant sold pre-paid calling cards to Plaintiffs and the members of the Class pursuant to the terms and conditions set forth on the face of the cards and in Defendant's advertising.

64.   The point-of-sale representations of the costs of using the cards and the number of calling minutes provided constitute a legally binding offer, and Plaintiffs' and Class members' acceptance of those terms by the use of such cards constitutes a legally binding acceptance, pursuant to valid consideration paid. Accordingly, legally binding contracts were created between Defendant and Plaintiffs and Class members who bought its pre-paid calling cards.

65.   Defendant breached its contracts with Plaintiffs and Class members through the conduct described above.

66.   As a result of Defendant's breach of contract, the actual per-minute cost of calls made using its pre-paid calling cards was much higher than the contractually-agreed to price because of additional material charges and methods of computation that were not properly disclosed.

67.   As a result of Defendant's breach of contract, Plaintiffs and members of the Class have been damaged in an amount to be determined at trial, and are entitled to compensatory damages plus interest, costs, and other such additional monetary or equitable relief as is deemed proper by the Court.

/ / /

/ / /

/ / /

16

## COUNT IV

### *Money Had and Received and Unjust Enrichment*

68.    Plaintiffs repeat and re-allege the allegations set forth in the above paragraphs as if fully set forth herein.

69.    As the result of Defendant's illegal agreements, representations and omissions as detailed above, Plaintiffs and Class members paid money and conferred a benefit upon Defendant that was originally in the Class members' possession as a result of fraud, payment under compulsion or mistake. Defendant received and retained this benefit under such circumstances that it would be inequitable and unconscionable to permit Defendant to retain this benefit without returning its reasonable value to Plaintiffs and the Class members. In fairness, all such monies, including all interest Defendant has earned on such monies while in wrongful possession thereof, should be paid to members of the Class.

70.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and Class members suffered injury, and therefore seek an order directing Defendant to return the amount each of them improperly were required to pay to Defendant, plus interest thereon, as well as impose a constructive trust over such monies.

## COUNT V

### *For Declaratory Relief*

71.    Plaintiffs repeat and re-allege the allegations set forth in the above paragraphs as if fully set forth herein.

72.    An actual controversy over which this Court has jurisdiction now exists between the Class members and Defendant concerning their respective rights, duties and obligations for which Plaintiffs desire a declaration of rights under the applicable contracts.

73.    Plaintiffs contend that Defendant is obligated to refund all monies improperly collected by Defendant or improperly retained by it in violation of

17

California law, and that any contractual provisions limiting their rights to obtain the full relief sought herein that Defendant may claim applies to these claims is unconscionable and illegal and thus unenforceable under the applicable law. Plaintiffs desire a judicial determination and declaration of the parties' respective rights, duties and obligations.

74.    A judicial declaration is necessary and appropriate at this time under the circumstances in order that the parties may ascertain their respective rights and duties.  Plaintiffs and Class members have been injured in fact at the time of or since their purchases and have standing to seek such a judicial determination.

75.    As a result, Plaintiffs and the Class seek and are entitled to the relief as detailed below as applicable to this cause of action.

### COUNT VI

#### *For Violations of Section 17538.9 of California Business and Professions Code*

76.    Plaintiffs repeat and re-allege the allegations set forth in the above paragraphs as if fully set forth herein.

77.    Defendant has engaged in unlawful business acts and practices, as set forth in detail above, in connection with its pre-paid calling card business by engaging in conduct in violation of Section 17538.9 of the California Business and Professions Code, which states as follows:

(a)    For the purposes of this section:

(1)    "Company" refers to any entity providing prepaid calling services to the public using its own or a resold telecommunications network.

(2)    "Prepaid calling services" or "services" refers to any prepaid telecommunications service that allows consumers to originate calls through an access number and authorization code, whether manually or electronically dialed.

/ / /

18

(3)   "Prepaid calling card" or "card" means any object containing an access number and authorization code that enables a consumer to use prepaid calling services.  It does not include any object of that type used for promotional purposes.

(4)   "Cellular   telephone   services"   means   facilities-based, commercial mobile telephone services.

(b)   The following standards and requirements for consumer disclosure and services shall apply to the advertising and sale of prepaid calling cards and prepaid calling services:

(1)   Any advertisement of the price, rate, or unit value in connection with the sale of prepaid calling cards or services shall include a disclosure of any geographic limitation to the advertised price, rate, or unit value, as well as a disclosure of any additional surcharges, call setup charges, or fees or surcharges applicable to the advertised price, rate, or unit value.

(2)   The following information shall be legibly printed on the card:

(A)   The name of the company.

(B)   A toll-free customer service number.

(C)   A toll-free network access number, if required to access service.

(D)   The authorization code, if required to access service.

(E)   The expiration date or policy, if applicable, except where paragraph (8) applies.

(3)   The company shall print legibly on the card or packaging, and the vendor shall make available clearly and conspicuously in a prominent area immediately proximate to the point of sale of the prepaid calling card or prepaid calling services the following information:

(A)   The value of the card and any surcharges, taxes, or fees, including monthly or other periodic fees, maintenance fees, per-call

19

access fees, surcharges for calls made on pay telephones, or surcharges for the first minute or other period of use that may be applicable to the use of the prepaid calling card or prepaid calling services within the United States.

(B)   Any surcharges for international calls or, in lieu of disclosing each surcharge, the highest surcharge for any international calls applicable on that card and any additional or different prices, rates, or unit values applicable to international usage of the prepaid calling card or prepaid calling services.

(C)   The minimum charge per call, such as a three-minute minimum charge, if any.

(D)   The definition of the term "unit," if applicable.

(E)   The billing decrement.

(F)   The name of the company.

(G)   The recharge policy, if any.

(H)   The refund policy, if any.

(I)   The expiration policy, if any.

(J)   The 24-hour customer service toll-free telephone number required in paragraph (6).

(4)   If a language other than English is used on the card or packaging to provide dialing instructions to place a call or to contact customer service, the information required by paragraph (3) shall also be disclosed in that language in the point of sale disclosure in the manner described in paragraph (3).

(5)   If a language other than English is used in the advertising or promotion of the card or prepaid calling services or is used on the card or packaging other than for dialing instructions, the information required by paragraph (3) shall also be disclosed in that language on the card or

20

packaging and in the point of sale disclosure in the manner described in paragraph (3).

(6)    A company shall establish and maintain a toll-free customer service telephone number that shall meet the following requirements:

(A)    A live operator shall answer incoming calls to the telephone number 24 hours a day, seven days a week.

(B)    The telephone number shall have sufficient capacity and staffing to accommodate a reasonably anticipated number of calls without incurring a busy signal or undue wait.  The company shall provide customer service in each language used on a prepaid calling card or its packaging and in the advertising or promotion of the prepaid calling card or prepaid calling services.

(C)    The telephone number shall allow consumers to lodge complaints and obtain information on all of the following:

(i)    All rates, surcharges, and fees.

(ii)    The company's recharge, refund, and expiration policies.

(iii)    The balance of use available in the consumer's account, if applicable.

(D)    A company shall not impose a fee or surcharge related to obtaining customer service, including any charge related to connecting with the customer service number or waiting to speak to a live operator.  A company offering prepaid cellular telephone services shall be deemed to be in compliance with the requirements of this paragraph if, when a request for information is made outside of normal business hours, that company provides the information requested on the next business day.

/ / /

21

(7)     A company that issues prepaid calling cards or prepaid calling services shall provide a refund to any purchaser of a prepaid calling card or prepaid calling services if the network services associated with that card or services fail to operate in a commercially reasonable manner.  The refund shall be in an amount not less than the value remaining on the card or in the form of a replacement card, and shall be provided to the consumer within 60 days from the date of receipt of notification from the consumer that the card has failed to operate in a commercially reasonable manner.

(8)     Cards without a specific expiration date or policy printed on the card, and with a balance of service remaining, shall be considered active for a minimum of one year from the date of purchase, or if recharged, from the date of the last recharge.

(9)     In the case of prepaid calling cards or services utilized at a pay phone, the company may provide voice prompt notification of any applicable pay phone surcharges, in lieu of providing notice of surcharges as required by paragraph (1) and by subparagraph (A) of paragraph (3), provided that the company provides users of prepaid calling cards or services with reasonable time to terminate the call after notification of applicable pay phone surcharges without incurring any charge for the call.

(10)    A company shall maintain access numbers with sufficient capacity to accommodate a reasonably anticipated number of calls without incurring a busy signal or undue delay.

(11)    A company may not impose any fee or surcharge that is not disclosed as required by this section or that exceeds the amount disclosed by the company.

/ / /

/ / /

/ / /

22

(12)   A company may not impose any charges if the consumer is not connected to the number called.  For the purpose of this paragraph, the customer shall not be considered connected to the number called if the customer receives a busy signal or the call is unanswered.

(13)   The value of the card and the amount of the various charges, however denominated, that are required to be disclosed by paragraph (3), shall be expressed in the same format.  If the value of a card is expressed in minutes, the minutes shall be identified as domestic or international and the identification shall be printed on the same line or next line as the value of the card in minutes.

78.   Defendant has violated Section 17538.9 of the California Business and Professions Code by engaging in certain prohibited practices, including, *inter alia*: a) misrepresenting the number of minutes of telephone service that a consumer will get from a pre-paid calling card; b) misrepresenting the amount of telephone connection time actually remaining on a calling card when a consumer is using the card; c) concealing when connection fees apply; d) employing misleading marketing techniques that make it virtually impossible for consumers to compare the rates and costs of using different pre-paid calling cards; e) misrepresenting the expiration dates on pre-paid calling cards; f) unfairly preventing customers from utilizing balances remaining on pre-paid calling cards when such balances are less than the cost of a phone call including connection fees; and g) failing to adequately disclose that Defendant charges more for calls involving wireless phones.

79.   As a result of Defendant's conduct as alleged above, Plaintiffs and members of the Class have been injured in fact and have lost money or property. They are thus entitled to the remedies available under the Unfair Competition Law, including restitution and disgorgement, appropriate preliminary and permanent injunctive relief and imposition of a constructive trust, and such other and further relief as the Court may deem proper.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request, on behalf of themselves and all members of the Class against Defendant for the injuries sustained by reason of each of the causes of action set forth above, an Order providing as follows, as appropriate for the particular cause of action:

1.     An order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiffs and their counsel of record to represent the proposed plaintiff Class;

2.     Equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein, requiring Defendant to issue complete and accurate disclosures, requiring restitution and disgorgement of the revenues wrongfully collected thereby and/or imposing a constructive trust on the revenues wrongfully obtained by Defendant, and providing a judicial declaration of the rights and obligations of the parties;

3.     An accounting of all monies wrongfully received by Defendant as a result of the conduct complained of herein;

4.     Damages in an amount to be determined at trial;

5.     Attorneys' fees, disbursements and costs of this action under, *inter alia*, Code of Civil Procedure §1021.5; and

6.     Such other favorable relief as this Court may deem just, equitable, or proper.

DATED: August 25, 2008          ROSNER & MANSFIELD, LLP

By: _____
ALAN M. MANSFIELD
alan@rosnerandmansfield.com
10085 Carroll Canyon Road, First Floor
San Diego, CA 92131
Tel: (858) 348-1005
Fax: (858) 348-1150

24

CLASS ACTION COMPLAINT

WHATLEY DRAKE & KALLAS, LLC
Edith M. Kallas
ekallas@wdklaw.com
Joseph P. Guglielmo
jguglielmo@wdklaw.com
1540 Broadway, 37th Floor
New York, NY 10036
Tel: (212) 447-7070
Fax: (212) 447-7077

WOOD LAW FIRM, LLC
E. Kirk Wood (ASB-2937-W55E)
ekirkwood1@cs.com
2900 1st Avenue South, Suite A
Birmingham, AL 35233
Tel: (205) 612-0243

LAW OFFICES OF ARCHIE LAMB, LLC
Archie Lamb, Jr.
alamb@archielamb.com
2017 Second Avenue North, 2nd Fl.
Birmingham, AL  36117

LAW OFFICES OF GREG L. DAVIS
Greg L. Davis
gldavis@knology.net
6987 Halcyon Park Drive
Montgomery, AL  36117

Howard Rubenstein
Attorney at Law
howardr@pdq.net
914 Waters Avenue, Suite 20
Aspen, Colorado 81611

Attorneys for Plaintiffs


JURY DEMAND

Plaintiffs demand a trial by jury of all claims so triable.

DATED: August 26 , 2008          ROSNER & MANSFIELD, LLP

By: _____
      ALAN M. MANSFIELD
      alan@rosnerandmansfield.com

Attorneys for Plaintiffs

25

CLASS ACTION COMPLAINT

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge R. Gary Klausner and the assigned discovery Magistrate Judge is Jacqueline Chooljian.

The case number on all documents filed with the Court should read as follows:

## CV08- 5642 RGK (JCx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=============================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)      NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

ROSNER & MANSFIELD, LLP
Alan M. Mansfield, Esq. (SBN: 125998)
alan@rosnerandmansfield.com
10085 Carroll Canyon Rd., Suite 100
San Diego, CA 92131
Tel: (858) 348-1005 / Fax: (858) 348-1150

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRESCENCIO GALVEZ, CARMEN ACUNA, and GUADALUPE GALVEZ, individually and on behalf of all others similarly situated,<br><br>PLAINTIFFS,<br><br>v.<br><br>TOUCH-TEL U.S.A., L.P. dba TOUCH-TEL USA, LLC,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV08-05642** RGK (JCx)<br><br><br>**SUMMONS** |

TO:     DEFENDANT(S): <u>TOUCH-TEL U.S.A., L.P.</u>

A lawsuit has been filed against you.

Within <u>20</u> days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, <u>ALAN M. MANSFIELD</u>, whose address is <u>10085 Carroll Canyon Rd., Suite 100, San Diego, CA 92131</u>. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

**NATALIE LONGORIA**

Dated: <u>AUG 2 7 2008</u>

By: _____

Deputy Clerk



*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

1198

COPY