WHATLEY DRAKE & KALLAS, LLC
Edith M. Kallas (*admitted pro hac vice*)
ekallas@wdklaw.com
Ilze C. Thielmann (*admitted pro hac vice*)
ithielmann@wdklaw.com
1540 Broadway, 37th Floor
New York, NY 10036
Tel:  (212) 447-7070
Fax:  (212) 447-7077

THE CONSUMER LAW GROUP, LLP
Alan M. Mansfield (SBN: 125998)
alan@clgca.com
9466 Black Mountain Road, Suite 225
San Diego, CA 92126
Tel:  (619) 308-5034
Fax:  (888) 341-5048

*Attorneys for Plaintiffs*
[Additional Counsel Appear on Signature Page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CRESCENCIO GALVEZ, CARMEN ACUNA, and GUADALUPE GALVEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TOUCH-TEL U.S.A., L.P. dba TOUCH-TEL USA, LLC,<br><br>Defendant. | Case No. 2:08-CV-05642-RGK-JC<br><br>PLAINTIFFS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION<br><br>Hearing Date: NOVEMBER 2, 2009<br>Time: 9:00 a.m.<br>Judge: Hon. R. Gary Klausner<br>Trial Date: April 20, 2010<br><br><u>Jury Trial Demanded</u><br>Complaint Filed: August 27, 2008 |

## I. CLASS CERTIFICATION IS PROPER BASED ON THE ALLEGATIONS OF THE COMPLAINT AND THE EVIDENCE

Defendant Touch-Tel ("TT") does not challenge that numerous predominant common issues of law and fact detailed in the plaintiffs' Opening Memorandum are susceptible to class-wide proof and relevant to establishing liability on a class-wide basis. The key issues here–how the cards are programmed and advertised, and how the rates and fees uniformly imposed by TT to materially reduce the represented minutes–all turn on conduct by TT, not Class members.

TT also does not challenge the numerosity of the class or adequacy of counsel; nor does it specifically challenge the trial plan or the conclusions in the Marlowe Declaration, in terms of showing the manageability of each cause of action and how class-wide damages can be determined. TT's claim that certification is improper because TT has supposedly complied with the law is an issue for trial, not this motion. *Browder v. Fleetwood*, 2008 WL 4384245, *7 (C.D. Cal. 2008).

TT primarily claims a class action would be "unmanageable" because it does not know the class members' names and every class member's card record information would need to be analyzed. However, the calling cards are uniformly programmed, so all cards would be deficient in the same way. Thielmann Decl. ¶¶17, 25-27. As the Marlowe Declaration shows, the percentage of loss is consistently significant. The variations TT focuses on go to the degree of damages suffered by class members–which, under *Blackie v. Barrack*, 542 F.2d 891, 905 (9th Cir. 1975), *cert. den.*, 429 U.S. 816 (1976), is not a bar to class certification. Moreover, information is available on retailers who sold these cards, providing a means of reaching class members with notice. *See* Declarations of Henry O. Arias & Tino Patel.

Finally, TT claims permitting only individual claims to proceed would be the "superior" method for resolving claims. As explained in the Opening Memorandum (and not disputed by TT), the issue is the availability of alternate *group-wide* methods

of adjudication, not proceeding with individual claims. Class-wide resolution is the only practical way to resolve such claims, as the pervasiveness of TT's wrongful conduct and the small amount of individual damages makes class treatment the superior method, whether certified to proceed under Rule 23(b)(1) or 23(b)(3).

## II. THE COURT CANNOT DENY CERTIFICATION BASED ON TTS DISPUTED FACTUAL CLAIMS

TT asserts class certification is improper because it claims it now complies with the law. Plaintiffs dispute this assertion based on TT's currently active website (*see* Ex. 4 to Declaration of Sara Hacker In Support of Reply). In any event, while the Court may look beyond pleadings to see if Rule 23 elements are met, a "plaintiff is not required to prove the merits of the class claim on a motion for certification, or even to establish the probability that the action will be successful," and all doubts are resolved in favor of certification. *Blackie, supra*, 542 F.2d at 901 & n.17. TT's assertion that it is now compliant with the law is not a basis to oppose certification. This motion "does not permit or require a preliminary inquiry into the merits." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177 (1974).[1]

In fact, TT admits that, until June 2008, it was not compliant with Bus. & Prof. Code §17538.9(b)(17), which sets forth standards and requirements for calling card services. According to §17538.9(b)(17) it is *illegal* to sell non-compliant cards: "[n]o person shall offer or sell any prepaid calling card or prepaid calling services that do not contain the information required to be disclosed on the card or packaging as provided in paragraph (3)." In addition, under the CLRA, Civ. Code §1770(a)(14), it is illegal for TT to engage in a transaction or make representations "which are prohibited by law." Texas law (where TT is based) is similar. *See* 16 Tex. Admin.

---

[1] Much of the data TT relies on in its Opposition was not provided in discovery, even though it was requested. *See* Ex. 2 to Hacker Decl. (First Requests for Production to TT). Since this critical information was not timely made available and was apparently deliberately withheld, the Court should not consider TT's supporting declarations. *Pfingston v. Ronan Eng'g. Co.*, 284 F.3d 999, 1005 (9th Cir. 2002).

1  Code § 26.34(f) (written disclosure requirements for calling cards and point of sale
2  information); §26.34(j) ("If a prepaid calling services company fails to provide
3  services at the rates disclosed at the time of initial purchase or at the time an account
4  is recharged, or fails to meet technical standards, the prepaid calling services
5  company shall either refund the customer for any unused prepaid calling services or
6  provide equivalent services."); *Bailey v. Gulf State Util.*, 27 S.W. 3d 713 (Tex.App.
7  2000) (claim based on violation of Texas public utility commission regulations
8  actionable in private suit). Such claims can be resolved on a class-wide basis for
9  liability purposes by summary adjudication. *Colgan v. Leatherman Tool Group, Inc.*,
10  135 Cal. App. 4th 663, 682-83 (2006) (affirming finding of summary adjudication on
11  class-wide basis based on showing and admissions conduct was not in compliance
12  with B & P Code § 17533.7).

13  The UCL imposes strict liability where consumers' losses are occasioned by
14  conduct that violates a statute. *Cortez v. Purolator etc.*, 23 Cal. 4th 163, 181(2000).
15  In *In Re Tobacco II Cases*, 46 Cal.4th 298, 320 (2009), the California Supreme Court
16  expressly rejected the argument made by TT here that "reliance" is an element of a
17  UCL claim that must be proven by every class member, and reversed the denial of
18  class certification on that ground. Where a party engages in a practice that violates
19  another statute, "reliance" as described by TT is not an element of that claim, since
20  by definition the transaction may be illegal *ab initio*. *Id*. at 325 n. 17; *Fletcher v. Sec.
21  Pac. Nat'l Bank*, 23 Cal. 3d 442, 446 (1979)("A trial court, however, pursuant to
22  [Bus. & Prof Code §17535] possesses the authority to order restitution of moneys, in
23  the absence of individualized proof of lack of knowledge, in order to preclude an
24  entity which has engaged in an unlawful trade practice from improperly profiting
25  from its wrongdoing."). Under the UCL, "those who have engaged in proscribed
26  conduct [should] surrender all profits flowing therefrom." *Id*. at 451. Here, as
27  indicated in the Marlowe Decl. and Hacker Reply Decl. ¶¶6-7, those overcharges and
28

1  profits are readily calculable based on discovery produced to date or maintained by
2  TT.

3  Whether TT's fees and non-disclosures violate the relevant laws and standards are predominant factual and legal issues for trial. The uniform programming TT employs and disclosures it instructs its distributors to provide retailers to display confirm these cards violate the law in the same way. This case is not significantly different from matters such as *Sav-On Drug Stores v. Sup. Ct.,* 34 Cal.4th 319, 333 (2004), where courts have found class certification appropriate to determine whether a particular policy or program is unlawful using pattern and practice evidence, statistical evidence, expert testimony "and other indicators of a defendants' challenged practice" all of which plaintiffs have presented.

12  TT argues that plaintiffs' reliance on Dr. Marlowe's studies are flawed because they speak to call experiences occurring over four years ago and the cards studied were not Tele-Centavos cards sold in California. First, Dr. Marlowe's study demonstrates a methodology available to establish liability and damages based on cards purchased *during the class period*. Marlowe Decl. ¶¶26-27. Dr. Marlowe states that current data could be used, including data from TT's records, to conduct a similar study for this case. *Id*. Second, the type and location of TT cards Dr. Marlowe studied is irrelevant, as TT admitted in deposition that the process of making a phone call using a TT card and the process TT uses to deduct value from cards is the same for every TT calling card *regardless of the card brand or where the card was sold*. Thielmann Decl. ¶17.

23  The evidence shows TT maintains records from which damages and restitution could be calculated. Hacker Reply Decl. ¶¶1, 6. The amount of damages or restitution can thus be determined at trial as part of a formula (as Dr. Marlowe explained), survey evidence based on data maintained by TT (as Mr. Mansfield explained), or in a subsequent proceeding to calculate damages (as held in *Blackie*).[2]

---

[2] TT argues that calls made to its customer service hotline show that individual experiences predominate because these calls are about a "range of issues." Placing

Such a case is ideally suited for class treatment. *Ballard v. Equifax Check Serv.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999) ("Class action certifications to enforce compliance with consumer protection laws are 'desirable and should be encouraged.'").

Contrary to TT's suggestion, the task of identifying class members is not a bar to certification on predominance grounds, as it is ministerial. *Hunt v. Check Recovery Sys.*, 241 F.R.D. 505, 514 (N.D. Cal. 2007) ("Here, the legal issues arising from Defendant's demand letters are the same for each class member. As Plaintiffs correctly point out, the only individual issues are ministerial, *e.g.* identifying class members and calculating actual damages."). Courts consistently certify classes even where individual class member identities are not known by defendants. Notice can be provided to class members in the same way TT advertises its cards–posting notices at retail locations where cards are sold–since its distributors retain lists of retailers that sell TT cards. *See generally* Patel Decl. and Arias Decl. *See also Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) (Internet class notice was acceptable substitute for individual notice where Defendant had no record of a part of a class of customers); *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 476 (N.D. Ill. 2009)(rejecting defendant's argument that certification was improper because it had no records of end purchasers; holding that "[n]otice by publication has been used in cases where potential class member names were confidential or impracticable to ascertain.").

### III. TYPICALITY AND ADEQUACY ARE SATISFIED

TT's argument that plaintiffs are not adequate or typical because they did not "rely" on TT's inaccurate disclosures is not only contrary to the law, but as shown

---

aside that such evidence has been requested but not yet produced to verify this claim, the fact customers may complain about a variety of problems does not alter whether TT's calling card fees and non-disclosures uniformly violate the relevant laws and standards.

TT attempts to minimize its customers' complaints by asserting it receives "approximately 800 calls per day" which, it contends, is a "small number of complaints." However, 800 calls per day for a four-year period totals over *1.1 million customer complaints* during the class period, which is certainly not a "small number".

above is also irrelevant if plaintiffs establish that the cards were sold in violation of the law. Plaintiffs suffered a material loss by purchasing cards that were illegal to sell. If the proper disclosures were not made–which TT admits is the case at least through June 2008–by statute, it is illegal to sell such cards and retain the profits generated thereby, under Supreme Court precedent such as *Fletcher*.

TT also claims plaintiffs are not "adequate" because they have not suffered any injury "as a result of" TT's violations of the law. But not only do plaintiffs make such allegations in their complaint at ¶¶10, 14, they also submitted uncontroverted evidence in deposition showing they suffered such a loss and that they understand their obligations to the entire class as class representatives. C. Galvez Dep. at 16:3-17:2, 49:1-10, 51:25-52:5 (Thielmann Decl. Ex. 4); G. Galvez Dep. at 18:13-21, 31:17-22, 39:1-17 (Thielmann Decl. Ex. 5). Plaintiffs, like the rest of the class, purchased calling cards to obtain, for example, $5.00 worth of calling time, but because of TT's hidden fees and charges, they did not receive the calling time they paid for. TT's counsel never questioned plaintiffs about what they would have done if the true facts had been fully disclosed. Yet the omission of a material fact (and a disclosure required by law should undisputably so qualify) properly forms the basis for liability under both the CLRA and the UCL. *Mass. Mut. Ins. Co. v. Sup. Ct.*, 97 Cal.App.4th 1282, 1289 (2002).

Moreover, "[t]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *American Council of the Blind v. Astrue*, 2008 WL 4279674, at *6 (N.D. Cal. 2008). TT does not dispute there are no such conflicts. In addition, because plaintiffs "are lay people who are not authorized to practice law" they not "required to know the 'legal matters' at issue" and are adequate class representatives if they can explain why they believe "that they were wronged by [defendant's] conduct." *del Campo v. Am. Corr. Counseling Servs., Inc.*, 254 F.R.D. 585, 594 (N.D. Cal. 2008). Plaintiffs (for whom English is not their primary language) explained the wrongful conduct that

forms the basis for the claims, and are adequate. C. Galvez Dep. at 49:1-20; 50:2-3; 51:25-52:5 (Thielmann Decl. Ex. 4); G. Galvez Dep. at 11:18-21; 12:17-24; 13:11-13; 39:1-25 (Thielmann Decl. Ex. 5).

## IV. CALIFORNIA LAW CAN BE APPLIED TO A NATIONWIDE CLASS

As the Supreme Court held in *Wash. Mut. Bank v. Sup. Ct.,* 24 Cal.4th 906, 921 (2001), "so long as the requisite significant contacts to California exist, a showing that is properly borne by the class action proponent, California may constitutionally require the other side to shoulder the burden of demonstrating that foreign law, rather than California law, should apply to class claims." While TT is based in Texas, it has admitted that California is one of its largest markets. Thielmann Decl. ¶28. And the discovery provided by TT so far shows TT's substantial California contacts. *Id*. ¶¶2, 28. TT does not dispute it bears the burden of proof as the proponent of applying another state's law. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001). However, TT fails to meet the burden properly shifted to it, based on its significant California contacts, to establish whether there is a need to engage in a conflicts-of-law analysis beyond what plaintiffs have already provided the Court, or that what is before the Court is wrong.

TT does not rebut plaintiffs' showing that the relevant laws of the 24 states where it does business, including Texas and California, do not materially conflict as to the claims at issue. *Phillips Petrol. v. Shutts*, 472 U.S. 797, 816 (1985); *Wash. Mut. Bank*, *supra*, at 920. TT also does not dispute the Ninth Circuit has previously held differences in the consumer protection laws of *all 50 states* were not sufficient to destroy predominance. *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1022-23 (9th Cir. 1998). Contrary to TT's suggestion, such a showing is also properly made in the manner plaintiffs provided. *In Re Prudential Ins. Sales Practices Lit.,* 148 F.3d 283, 315 (3d Cir. 1998)(trial court properly relied on charts containing analysis of state laws to establish no material conflict). TT simply asserts that a material conflict exists without showing the Court what that conflict is, referring only to cases addressing

different issues and legal schemes. TT only points out that Texas law requires the use of certain font sizes on calling cards and that Florida has no such requirement, but TT fails to show this difference is a material conflict. Minor differences such as this are recognized to be "false conflicts", which do not impact the predominance question. *Shutts*, 472 U.S. at 838. To the extent we need to rebut this assertion, plaintiffs submit the calling card disclosure statutes from the states that are TT's largest markets (*see* Thielmann Decl. ¶28), which show that any alleged differences are immaterial. Ex. 3 to Hacker Reply Decl.

TT also argues that applying California law would disregard other state's interests in applying their consumer protection laws and would disregard the interests of the 17 states that do not regulate calling card disclosures. However, TT fails to show any material conflict between the consumer protection laws of other states and California law. *Clothesrigger v. GTE Corp.*, 191 Cal. App. 3d 605, 616 (1987)("the court simply erred in stating California has no interest in providing nonresident plaintiffs greater protection than their home states provide. California's more favorable laws may properly apply to benefit nonresident plaintiffs when their home states have no identifiable interest in denying such persons full recovery."). The lack of disclosure statutes does not show TT's conduct is legal in those states because, as plaintiffs have shown, those states have similar laws generally prohibiting deceptive trade practices. Nor does it demonstrate those states have no interest in protecting consumers from TT's wrongful conduct, or for that matter, that those states have some interest in *not* protecting consumers that would materially conflict with California's interests. And among the seven states where TT does business that have calling card disclosure laws– which include TT's largest markets– as detailed above there is no material conflict.

TT also fails to rebut plaintiffs' showing and case law demonstrating that the claims for breach of contract and unjust enrichment do not raise material conflict of law issues. *See Singer v. AT&T Corp.*, 185 F.R.D. 681, 691-92 (S.D. Fla. 1998)

(breach of contract and unjust enrichment claims are "universally recognized causes of action that are materially the same throughout the United States."). Since TT fails to meet its burden to show there is a material conflict between the relevant laws, or between the laws of Texas and California, there is no injury in applying California law here.

TT's reliance on cases such as *In re Paxil Litig.*, 212 F.R.D. 539 (C.D. Cal. 2003), and *Haley v. Medtronic, Inc.*, 169 F.R.D. 653 (C.D. Cal. 1996) is misplaced. Those are product liability/"mass tort" cases involving personal injuries to plaintiffs from medical or drug-related products, which are often found not amenable to class treatment because of the nature of the injuries and the complex causal connections involved. But this is not a products-liability action. This is a case based on state consumer protection laws, as was the case in *Hanlon,* which upheld certification of a nationwide class of similar claims even though the defendant was based in Michigan.

## V. PROCEEDING WITH INDIVIDUAL CLAIMS WOULD NOT BE A "SUPERIOR" METHOD OF PROCEEDING

"The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prod. v. Windsor*, 521 U.S. 591, 617 (1997). As the Court noted in *Amchem*, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud….." *Id.* at 625. Where a case involves a single defendant and a large number of class members who suffered damages as a result of defendant's standardized conduct, and the size of the damage claim is small, "[i]n light of the extent of common issues confronting Plaintiffs and the overall desire for consistent judgments, taken together with the individually small amounts of damages at issue in this case, judicial economy warrants consolidating all of Plaintiffs' claims into a single class action." *In re Apple iPod iTunes Antitrust Litig.*, 2008 WL 5574487, at *8 (N.D. Cal. Dec. 22, 2008). *See also Rannis v. Fair Credit Lawyers, Inc.*, 2007 U.S. Dist. LEXIS 17856, *18 (C.D. Cal. 2007) (because

1  "few potential class members could afford to undertake individual litigation …
2  individual members are unlikely to have a significant interest in controlling the
3  litigation.")  As this case does not involve complex claims or significant individual
4  issues of causation and damages, and the damages of each class member are small,
5  conducting this case as a class action is the superior method of resolving this
6  controversy.  *Hunt, supra*, 241 F.R.D. at 514 (as individual claims are small no
7  incentive to individually sue, making class action superior method of proceeding).

## VI. CERTIFICATION UNDER RULE 23(B)(1) AND (B)(2) IS PROPER

TT argues that certification under Rule 23(b)(1) is inappropriate because adjudication of individual claims would not be dispositive of the class members' claims.  However, this is the standard for certification under 23(b)(1)(B); plaintiffs move for certification under 23(b)(1)(A).  TT also argues that certification pursuant to 23(b)(2) is improper because, since June 2008, TT has been compliant with §17358.9, making injunctive relief "moot" and damages the predominant form of relief.  However, whether TT is actually compliant with §17358.9 is disputed (*see* Hacker Reply Decl. Ex. 4), and is a merits question for resolution at trial.  Plaintiffs seek equitable relief to prevent TT's misrepresentations in its uniform advertising regarding the number of minutes available, TT's failures to disclose that its cards do not deliver the number of minutes promised, and TT's misrepresentations regarding minutes available in its computerized voice prompts. Complaint ¶¶5, 6, 32-35, 75-79; Prayer for Relief ¶2.  TT's supposed compliance with §17358.9 does not "moot" plaintiffs' prayer for equitable relief.  Certification under 23(b)(2) is thuse appropriate even where damages are sought. *Molski v. Gleich*, 318 F.3d 937, 950 (9th Cir. 2003).

## VII. CONCLUSION

Based on the above, the Court should certify the proposed class.

Dated: October 23, 2009            Respectfully submitted,

THE CONSUMER LAW GROUP

By: /s/ Alan M. Mansfield
    ALAN M. MANSFIELD

PLAINTIFFS' REPLY MEM. OF POINTS &        - 10 -        Case No. 2:08-CV-05642-RGK-JC
AUTHORITIES IN SUPPORT OF CLASS CERT.

|   |   |
|---|---|
| 1 | alan@clgca.com |
| 2 | 9466 Black Mountain Road, Suite 225<br>San Diego, CA 92126 |
| 3 | Telephone: (619) 308-5034<br>Facsimile: (888) 341-5048 |
| 4 | WHATLEY DRAKE & KALLAS, LLC |
| 5 | Edith M. Kallas, Esq.<br>ekallas@wdklaw.com |
| 6 | Ilze C. Thielmann, Esq.<br>ithielmann@wdklaw.com |
| 7 | 1540 Broadway, 37th Floor<br>New York, NY 10036 |
| 8 | Telephone: (212) 447-7070<br>Facsimile:: (212) 447-7077 |
| 9 | WHATLEY DRAKE & KALLAS, LLC |
| 10 | Sara C. Hacker, Esq.<br>shacker@wdklaw.com |
| 11 | 2001 Park Place North, Suite 1000<br>Birmingham, AL 35203 |
| 12 | Telephone: (212) 447-7070<br>Facsimile:: (212) 447-7077 |
| 13 | WOOD LAW FIRM, LLC |
| 14 | E. Kirk Wood (ASB-2937-W55E)<br>ekirkwood1@cs.com |
| 15 | 2900 1st Avenue South, Suite A<br>Birmingham, AL 35233 |
|    | Tel: (205) 612-0243 |
| 16 |    |
| 17 | LAW OFFICES OF ARCHIE LAMB, LLC<br>Archie Lamb, Jr. |
| 18 | alamb@archielamb.com<br>2017 Second Avenue North, 2nd Fl. |
| 19 | Birmingham, AL 36117<br>Tel: (205) 324-4644 |
| 20 | LAW OFFICES OF GREG L. DAVIS |
| 21 | Greg L. Davis<br>gldavis@knology.net |
| 22 | 6987 Halcyon Park Drive<br>Montgomery, AL 36117 |
| 23 | Tel: (334) 832-9080 |
| 24 | Howard Rubenstein<br>Attorney at Law |
| 25 | howardr@pdq.net<br>914 Waters Avenue, Suite 20 |
| 26 | Aspen, Colorado 81611<br>Tel: (832) 715-2788 |
| 27 |    |
| 28 |    |

| | |
|---|---|
| 1 | Thomas D. Mauriello (SBN: 144811) |
| 2 | tomm@maurlaw.com |
|   | MAURIELLO LAW FIRM, APC |
| 3 | 1181 Puerta Del Sol, Suite 120 |
|   | San Clemente, CA 92673 |
| 4 | Tel: (949) 542-3555 |
|   | Fax: (949) 606-9690 |
| 5 | |
|   | *Attorneys for Plaintiffs* |